# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMUNDO GONZALEZ; RAY A. GONZALEZ; and RAMONA GONZALEZ,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br><br>CNA FORECLOSURE SERVICE, INC.,<br><br>　　　　　Defendant. | CASE NO. 09 CV 2034 MMA (MDD)<br><br>**ORDER:**<br><br>**DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 21]<br><br>**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 22] |

Currently before the Court are Plaintiffs Raymundo Gonzalez, Ray A. Gonzalez, and Ramona Gonzalez's motion for summary judgment [Doc. No. 21], and Defendant CNA Foreclosure Service, Inc.'s motion for summary judgment [Doc. No. 22]. On April 4, 2011, the Court in its discretion found the motions suitable for determination on the papers and without oral argument, pursuant to Civil Local Rule 7.1(d)(1). For the reasons set forth below, the Court **GRANTS** Defendant's motion for summary judgment, and **DENIES** Plaintiffs' motion for summary judgment.

///

## BACKGROUND

The following facts are not reasonably in dispute.[1] Plaintiffs owned residential real property located at 40 Walnut Avenue, Chula Vista, California 91911 ("Property"). [Doc. No. 21, Exh. E, Decl. of Michele Canty, 12:3-6.] Plaintiffs obtained the Property subject to a $330,000 loan, secured by a Deed of Trust in favor of Dakota Loans, Inc. [*See* Doc. No. 24, Exh. A.] Plaintiffs failed to make their June 1, 2009 loan payment, and Dakota Loans retained Defendant CNA Foreclosure Service ("CNA") on or about August 17, 2009 to act as trustee and file a Notice of Default "and proceed with the foreclosure proceedings as necessary." [*Id.*; Canty Decl. 12:10-14; 12:21-13:8.] Prior to CNA's involvement, Land America Commonwealth Title was the Trustee of record for the Property. [Canty Decl. 24:9-17; Doc. No. 24, Exh. E.] Although CNA "accepted the position as trustee at the time the notice of default was filed . . . CNA was not recorded as the trustee until later." [Canty Decl. 24:9-25:10.] Specifically, CNA recorded the Substitution of Trustee on November 25, 2009. [Doc. No. 24, Exh. D.]

On August 18, 2009, at Dakota Loan's instruction, CNA caused a "notice of default and election to sell under deed of trust" to be recorded against the Property. [Doc. No. 24, Exh. A; Canty Decl. 26:20-21; 27:7-20.] CNA also mailed the notice to Plaintiffs, which stated that as of August 17, 2009, Plaintiffs were past due in their loan payments and owed $11,536.53. [Doc. No. 24, Exh. A.] The Notice of Default further stated CNA had been appointed as Trustee. [*Id.*]

On August 28, 2009, CNA mailed Plaintiffs a "30 Day Notice" entitled "Notice Under Fair Debt Collection Practices Act" advising Plaintiffs their mortgage loan had been referred to CNA "for foreclosure based upon default under the terms of the Note and Deed of Trust." [Doc. No. 24, Exh. B.] The August 28 letter included a copy of the previously recorded Notice of Default, and stated, in bolded and underlined text: "**<u>Please be advised that we are attempting to collect a debt. Any information obtained from the Trustor will be used for that purpose.</u>**" [*Id.*]

Plaintiffs filed the present action against CNA on September 17, 2009, alleging two causes of action for violations of the Fair Debt Collection Practices Act ("FDCPA") and California's

---

[1] Neither Plaintiffs nor Defendant submitted a separate statement of undisputed material facts in support of their respective motions for summary judgment, as required by the undersigned's chambers Rule I.

Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). [Doc. No. 1.] The parties filed their cross-motions for summary judgment on February 8, 2011.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hubbard v. 7-Eleven*, 433 F. Supp. 2d 1134, 1139 (S.D. Cal. 2006) (citing former Fed. R. Civ. P. 56(c)(2)). It is beyond dispute that "[t]he moving party bears the initial burden to demonstrate the absence of any genuine issue of material fact." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007) (citation omitted). "Once the moving party meets its initial burden, . . . the burden shifts to the nonmoving party to set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks and citations omitted).

A mere scintilla of evidence is not sufficient "to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting *Anderson*, 477 U.S. at 249, 252). Thus, in opposing a summary judgment motion it is not enough to simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). However, when assessing the record to determine whether there is a "genuine issue for trial," the court must "view the evidence in the light most favorable to the nonmoving party, drawing all reasonable inferences in his favor." *Horphag*, 475 F.3d at 1035 (citation omitted). On summary judgment, the Court may not make credibility determinations; nor may it weigh conflicting evidence. *See Anderson*, 477 U.S. at 255. Thus, as framed by the Supreme Court, the ultimate question on a summary judgment motion is whether the evidence "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

**DISCUSSION**

**I.  FAIR DEBT COLLECTION PRACTICES ACT**

"The FDCPA was enacted to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1198 (C.D. Cal. 2008) (internal marks omitted) (citing 15 U.S.C. § 1692(e)).  As a threshold matter, liability cannot attach under the FDCPA unless the defendant is a debt collector, trying to collect a debt.  *Id*. at 1199.

Plaintiffs assert they are entitled to summary judgment because CNA is a debt collector within the meaning of the FDCPA, and CNA failed to provide Plaintiffs with the notices required by the statute.  [Doc. No. 21, p. 1.]  In addition, Plaintiffs accuse CNA of making false, deceptive, and misleading statements in the notices, and wrongfully threatening to take legal action against Plaintiffs it could not legally take.  [*Id*.]  Defendant opposes Plaintiffs' motion and also moves for summary judgment on the grounds that CNA is not a debt collector, nor did CNA engage in any activity regulated by the FDCPA.  [Doc. Nos. 22, 23.]

**(A)  Debt Collector**

The FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  CNA argues it is not a debt collector within the meaning of the FDCPA because it acts solely as a trustee or agent on behalf of a lender.  [Doc. No. 22, p.3; Canty Decl. 8:13-14 (CNA "is solely a trustee performing nonjudicial foreclosure processes".]  At a lender's instruction, CNA will prepare a notice of default, and the mailings required by California Civil Code sections 2494 *et seq*.  [Canty Decl. 8:13-9:17.]  CNA does not, however, assist or otherwise facilitate collection of the money allegedly owed.  [*Id*. at 39:13-41:16.]  Although the lender provides CNA with the delinquent payment amount to be included in the notice of default, if a borrower were to contact CNA to make a payment or

1  otherwise dispute the amount owed, CNA would refer the borrower directly to the lender. [*Id*.]
2  CNA has never collected money from a borrower on any of the accounts it has serviced. [*Id*. at
3  1:8-9.] Plaintiffs erroneously construe Ms. Canty's testimony as "acknowledg[ing] [that CNA]
4  regularly facilitates in the collection of debts." [Doc. No. 21, p.3 n.2 (citing Canty Decl. 8:15-
5  9:17.] However, Ms. Canty's testimony is clear, CNA has no involvement in collecting money
6  from borrowers on behalf of the lenders; CNA's role is strictly limited to enforcing the lender's
7  security interest in the property. [Canty Decl. 8:13-14; 39:13-41:16.]

8      Based on Ms. Canty's undisputed testimony, the Court concludes CNA is not a "debt
9  collector" within the meaning of the FDCPA. At no time did CNA seek to collect money from
10 Plaintiffs. Rather, CNA's notices informed Plaintiffs that if they did not take action with respect
11 to the amounts allegedly owed to the beneficiary, Dakota Loans, Plaintiffs may lose legal rights
12 and the Property may be subject to foreclosure. [*See* Doc. No. 24, Exhs. A-B.] As the Ninth
13 Circuit noted in *Santoro v. CTC Foreclosure Serv. Corp.*, 12 Fed. Appx. 476 *11-12 (9th Cir.
14 2001), a foreclosure sale notice issued in compliance with California Civil Code section 2924 *et*
15 *seq.* does not seek to collect a debt.[2] Thus, such notices do not fall within the conduct prohibited
16 by the FDCPA. [*Id*.] Plaintiffs' reliance on case law outside the Ninth Circuit purportedly to the
17 contrary is not persuasive, as Plaintiffs acknowledge "the courts are not uniform in their treatment
18 of th[e] distinction . . . between collecting debts and merely enforcing a security interest in
19 property." [Doc. No. 24, p.1; Doc. No. 21, n.2 (citing cases from the Fourth Circuit, Fifth Circuit,
20 and district courts in Louisiana and Oregon).]

21     Nor does the Court find that CNA's August 28 letter to Plaintiffs stating, "**Please be
22 advised that we are attempting to collect a debt. Any information obtained from the Trustor
23 will be used for that purpose**" requires a different result. [*See* Doc. No. 24, Exh. C.] Ms. Canty
24 provided unrebutted testimony that as the trustee, CNA was not required to provide the August 28
25 letter to Plaintiffs, and did so merely as a courtesy to encourage Plaintiffs to take action to preserve
26 their rights with respect to the Property. Ms. Canty explained, "this notice is not required on this

---

28  [2] Pursuant to Federal Rule of Appellate Procedure 32.1 and local rule for the United States Court of Appeals for the Ninth Circuit 36-3, this Court does not rely on *Santoro* as precedent, but does find the opinion illustrative.

1 particular loan. However, it's included to make sure that the Gonzalezes realize that they have the
2 right to talk with the beneficiary about the foreclosure process and the debt amount." [Canty Decl.
3 51:11-22.] This single statement does not transform CNA into a debt collector. Nor is it sufficient
4 to create a genuine issue of material fact regarding whether CNA is a debt collector within the
5 meaning of the FDCPA. *See Nwoke v. Countrywide Home Loans, Inc.*, 251 Fed. App. 363, 365
6 (7th Cir. 2007).

7 The plain language of the statute provides, a debt collector is "any person who uses any
8 instrumentality of interstate commerce or the mails in any business the principal purpose of which
9 is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly,
10 debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). CNA's
11 undisputed testimony establishes that it is not a debt collector as defined by the FDCPA. The sole
12 purpose of CNA's business is to act as a trustee for lenders to facilitate the foreclosure process.
13 [Canty Decl. 8:13-24.] All the information CNA includes in the notices regarding any amounts
14 owed are provided by the lenders, CNA does not interact with the borrowers regarding the
15 amounts owed, nor has CNA ever collected money on behalf of the lenders. Accordingly, CNA's
16 isolated statement that it is "attempting to collect a debt" does not transform CNA into a debt
17 collector. CNA is therefore not subject to liability under the FDCPA.

18 **(B) Debt**

19 Even if the Court assumes CNA is a debt collector, Plaintiffs' FDCPA claim fails because
20 "foreclosing on a property pursuant to a deed of trust is not the collection of a debt within the
21 meaning of the FDCPA." *Izenberg*, 589 F. Supp. 2d at 1199 (internal marks and citations
22 omitted). The FDCPA defines a "debt" as "any obligation or alleged obligation of a consumer to
23 pay money arising out of a transaction in which the money, property, insurance, or services which
24 are the subject of the transaction are primarily for personal, family, or household purposes,
25 whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Although
26 the Ninth Circuit has not addressed this particular question, the district courts in this circuit are in
27 accord, that the nonjudicial foreclosure process facilitated by CNA does not fall within the
28 meaning of "debt" as defined by the FDCPA. *Quintero Family Trust v. Onewest Bank*, 2010 U.S.

Dist. LEXIS 63659 *10-12 (S.D. Cal. June 25, 2010) (citing *Diessner v. Mortgage Elec. Reg. Sys.*, 618 F. Supp. 2d 1184, 1189 (D. Ariz. 2009); *Izenberg*, 589 F. Supp. 2d at 1199; *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002); *Ricon v. Recontrust Co.*, No. 09cv9370 (IEG)(JMA), 2009 U.S. Dist. LEXIS 67807 (S.D. Cal. Aug. 4, 2009)).

> As one court explained:
>
> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Quintero Family Trust*, 2010 U.S. Dist. LEXIS at *12 (citing *Hulse*, 195 F. Supp. 2d at 1204)).

Although Plaintiffs cite opinions from other circuits that have reached a different conclusion, this Court prefers to join the clear precedent set by its fellow courts in this Circuit. Moreover, viewing the foreclosure process as the enforcement of an interest in property, not the collection of a debt, is consistent with the Ninth Circuit's persuasive position in *Santoro*, 12 Fed. Appx. at *11-12, that a foreclosure sale notice issued in compliance with California Civil Code section 2924 *et seq.* does not seek to collect a debt. This conclusion is particularly apt in the present case where the only alleged wrongdoing centers on the pre-foreclosure notices sent by CNA. Accordingly, the Court concludes CNA was not attempting to collect a debt and Plaintiffs' FDCPA claim fails as a matter of law.

The Court is not persuaded by Plaintiffs' argument that CNA's conduct is nevertheless actionable because it is "*independent* from any non-judicial foreclosure, and [occurred] well before any non-judicial foreclosure was to take place." [Doc. No. 24, p.4 (emphasis in original).] A non-judicial foreclosure does not occur in a vacuum. The foreclosure process is exactly that, a process, which requires certain notices and recordings such as those provided by CNA here. *See, e.g.,* Cal. Civ. Code § 2924c (notice of default requirements); *Pro Value Properties, Inc. v. Quality Loan Service Corp.*, 170 Cal. App. 4th 579, 581 (2009) (noting defendant "instituted nonjudicial foreclosure proceedings, commencing with the recordation of a notice of default"); Canty Decl.

8:19-9:14.]. Further, even if the notices were deemed independent acts, CNA did not violate the FDCPA because it is not a debt collector subject to the requirements imposed by the statute.

Finally, Plaintiffs' reliance on *Gumbs v. Litton Loan Servicing*, 2010 U.S. Dist. LEXIS 47890 (E.D. Cal. May 13, 2010) to establish that CNA's conduct went beyond merely foreclosing on the property under a Deed of Trust, and constituted debt collection activity, is misplaced. In *Gumbs*, the district court denied Litton Loans's motion to dismiss the plaintiffs' Rosenthal Act claim because the defendant allegedly "made deceptive phone calls, sent letters, and engaged in unlawful acts in an attempt to collect a debt it was not lawfully owed." *Id*. at *13. Moreover, Litton Loans allegedly demanded and received mortgage payments from the plaintiffs. The facts of *Gumbs* are dissimilar from those in the present action. Here, the undisputed testimony demonstrates CNA never demanded nor received money from Plaintiffs. Rather, on behalf of Dakota Loans, CNA sent three notices to Plaintiffs, including the notice of default, the unnecessary FDCPA notice, and the notice of substitution of trustee. CNA's limited involvement to facilitate the foreclosure process does not rise to the level of conduct alleged in *Gumbs*.

**(C)  CNA's Status as Trustee**

Plaintiffs also argue CNA's failure to record the substitution of trustee until November 2009 made CNA's notices false and misleading because CNA was not the trustee when it sent the August notices. [Doc. No. 24, p.2-3; Doc. No. 21, p.7-8.] The Court disagrees. As Defendant points out, California Civil Code section 2934a(c) specifically allows a trustee appointed by the beneficiary to record the substitution of trustee after the notice of default is recorded, so long as the substitution is recorded prior to the notice of sale. The record is devoid of any evidence that CNA did not timely file the substitution of trustee in accordance with California Civil Code section 2934a. Regardless, because the Court finds that CNA is not a debt collector and CNA did not attempt to collect a debt, CNA's conduct cannot give rise to liability under the FDCPA.

**II.  ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT**

Much like the FDCPA, California's Rosenthal Act prohibits "debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts. . . ." *Gardner v. Am. Home Mortg. Serving, Inc.*, 691 F. Supp. 2d 1192, 1198 (E.D. Cal. 2010) (citation omitted).

The Act likewise only governs the conduct of debt collectors in their efforts to collect consumer debts. *Id*.

Moreover, "[t]he law is clear that foreclosing on a deed of trust does not invoke the statutory protections of the [Rosenthal Act]." *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1151 (E.D. Cal. 2010) (citations omitted); *Gardner*, 691 F. Supp. 2d at 1189-99 ("foreclosure pursuant to a deed of trust does not constitute debt collection under the Rosenthal Act. . . . California courts have declined to regard a residential mortgage loan as a debt under the Rosenthal Act"); *Castenada v. Saxon Mortg. Services*, 687 F. Supp. 2d 1191, 1197 (E.D. Cal.) ("foreclosure pursuant to a deed of trust does not constitute debt collection under [the Rosenthal Act]") (collecting cases); *Keen v. Am. Home Mortg. Servicing, Inc.*, 664 F. Supp. 2d 1086, 1095 (E.D. Cal. 2009) (same); *Rosal v. First Federal Bank of California*, 671 F. Supp. 2d 1111, 1134-35 (N.D. Cal. 2009) (same). Because the Court concludes CNA is not a debt collector and did not engage in debt collection activities, *see* Section I *supra*, CNA is not subject to liability under the Rosenthal Act and Plaintiffs' second cause of action fails as a matter of law.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant CNA's motion for summary judgment, and **DENIES** Plaintiffs' motion for summary judgment. This order disposes of all claims in this action. Accordingly, the Clerk of Court is instructed to terminate the case file and enter judgment in favor of Defendant CNA Foreclosure Service, Inc., and against Plaintiffs Raymundo Gonzalez, Ray A. Gonzalez, and Ramona Gonzalez.

**IT IS SO ORDERED.**

DATED: June 29, 2011

Hon. Michael M. Anello
United States District Court